# STATE OF MICHIGAN

# COURT OF APPEALS

In re ROBINSON, Minors.

UNPUBLISHED
November 1, 2016

No. 332022
St. Claire Circuit Court
Family Division
LC No. 13-000276-NA

Before: GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to minor children SR and TR under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BACKGROUND

SR came into care in October 2013 after police raided the home respondent shared with SR's mother[1] and found heroin, a marijuana pipe and a loaded gun in an upper kitchen cabinet. The 2013 police raid led to criminal charges against respondent and in May 2014 respondent pled guilty to two counts of Possession of Narcotics/Cocaine under 25 grams and Delivery/Manufacturing Narcotics/Cocaine under 50 grams and was incarcerated. He first appeared at a review hearing regarding SR in February 2014 while those charges were pending. At that hearing he was apprised of the court's orders regarding the services in which he needed to engage if he was to be reunified with SR. Respondent was released from incarceration in October 2014. TR was born the same month. After respondent's release from custody, petitioner provided him with referrals for a substance abuse assessment, random drug screens, a psychological assessment, and counseling. Respondent failed to follow through with those services. He was also in violation of his probation conditions for failure to drug screen. Respondent was arrested in February 2015 on a bench warrant and remained incarcerated for the remainder of the proceedings involving SR and TR.

## II. STATUTORY GROUNDS FOR TERMINATION

### 1. SUFFICIENCY OF THE EVIDENCE

---

[1] The children's mother released her parental rights in March 2015 and is not a party to this appeal.

-1-

Respondent first argues that there was insufficient evidence to support the statutory grounds for termination because petitioner failed to provide respondent with any reunification services. We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich.App 261, 264; 817 NW2d 115 (2011). "It is only necessary for the DH[H]S to establish by clear and convincing evidence the existence of one statutory ground to support the order for termination of parental rights." *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012).

We also review the trial court's decision that petitioner made reasonable efforts to reunify the family for clear error. See *In re Fried*, 266 Mich App 535, 542–543; 702 NW2d 192 (2005). "The time for asserting the need for accommodation in services is when the court adopts a service plan...." *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000).

After a child has been removed from the parents' custody, petitioner is required to make reasonable efforts to reunify the child and family. MCL 712A.19a(2). This requires petitioner to provide the parents with services that help them rectify the conditions that caused the child's removal. *In re Fried*, 266 Mich App at 541. Petitioner is not relieved of this obligation when a parent is incarcerated. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). Although petitioner cannot refer an incarcerated parent to social service agencies for services, petitioner must make respondent aware of the need to engage in particular services or facilitate respondent's access to services with the prison social worker. *Id*. at 156–158. In this case, petitioner fulfilled both obligations.

Respondent's argument that he was not provided with any reunification services is incorrect. SR and later, TR were removed from respondent's care because of respondent's substance abuse and related criminality. Petitioner drafted a treatment plan to rectify these conditions. *In re Fried*, 266 Mich App at 541 citing MCL 712A.18f(1), (2), and (4). Respondent was present and made no objection as petitioner read respondent's treatment plan regarding SR into the record on February 10, 2014, at a combined dispositional review permanency planning hearing. These same conditions were read to him at hearings regarding both SR and TR on December 18, 2014 and August 3, 2015. In the treatment plan, respondent was ordered "to complete psychological evaluations and substance abuse assessments and follow through with recommendations, remain drug free and provide verification of such through random drug screens, obtain and maintain independent safe/suitable and stable housing free of unrelated boarders, drugs and drug users, illegal weapons and domestic violence, maintain and provide proof of a legal source of income, attend individual and family therapy,  and not reside in the home of the mother and the children until completion of referred services and with petitioner's approval." Before respondent was incarcerated, petitioner provided respondent with referrals for substance abuse and psychological assessments and professional counseling on February 7, 2014, and to an inpatient substance abuse treatment program on November 12, 2014. After respondent was incarcerated, caseworker Koch sent multiple letters to respondent. Koch also visited respondent during his incarceration. Testimony from Koch's supervisors supported

that Koch also made contact with the Michigan Department of Corrections (MDOC) social worker regarding the services available to respondent in prison. Foster care supervisor Nickesh also testified that she advised respondent to take part in any services available to him while in prison to assist with his rehabilitation.

Respondent contends that Koch should have visited him in prison earlier and more often than she did. However, petitioner is not required to have face-to-face contacts with incarcerated parents. FOM 722-06H[2]. Petitioner is only required to "maintain monthly telephone and/or written contact with an incarcerated parent." FOM 722-06H[3]. The evidence showed that Koch regularly communicated with respondent by letter and although not required, visited respondent in prison.

In support of his argument that services were insufficient, respondent additionally argues that when the children originally became state wards, the court's focus was only on the mother and that respondent was ignored. He makes a due process argument in this regard which we will address later in this opinion. His factual argument is incorrect. SR came into care in October 2013. The mother consented to jurisdiction in November 2013. A trial court order indicates that respondent was present for the dispositional review hearing in February 2014 and that both respondent and the mother were ordered to engage in services to address the barriers to reunification. Thus, respondent was not ignored. Regardless of the due process considerations, this respondent was offered services prior to his incarceration, communicated with during his incarceration, and again afforded access to services upon his release.

Because the services provided by petitioner before and after incarceration were sufficient to promote reunification, respondent's substantial rights were not affected by a lack of reasonable efforts.

A "contention that reasonable services were not offered ultimately relates to the issue of sufficiency" of the evidence. *In re Fried*, 266 Mich App at 541. MCL 712A.19a(2). The court's finding that the statutory grounds for termination were established is supported by evidence on the record.

The trial court found that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

---

[2] Michigan Department of Health and Human Services, *Children's Foster Care Manual*, <dhhs.michigan.gov/olmweb/ex/FO/Public/FOM/000.pdf> (accessed September 30, 2016).

[3] Michigan Department of Health and Human Services, *Children's Foster Care Manual*, <dhhs.michigan.gov/olmweb/ex/FO/Public/FOM/000.pdf> (accessed September 30, 2016).

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

*(i)* The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The court assumed jurisdiction over SR in November 2013 and over TR in January 2015. The conditions that led to the adjudication were respondent's substance abuse and criminality. When the court terminated respondent's rights in January 2016, more than 182 days later, respondent was incarcerated on a drug-related offense. Respondent's second incarceration resulted in substantial part from his failure to comply with the terms of his probation concerning substance abuse treatment. The record contains evidence that he left the substance abuse program which was a condition of his parole and went to the mother's home. Respondent incredulously testified that he left the Huron House program to admit himself into the stricter McLaren Hospital program. However, there was no evidence supporting his admission to McLaren and the evidence that did exist contradicted his whereabouts during the same period. The record revealed that instead of participating in substance abuse rehabilitation in December 2014, respondent was at the mother's house in violation of the trial court's order. During this same time, respondent also tested positive for cocaine, opiates and THC. While petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. The court did not err in determining under MCL 712A.19b(3)(c)(*i*) that the conditions that led to adjudication remained unrectified and would not be rectified within a reasonable time. The trial court is only required to find that one statutory ground was established in order to terminate parental rights. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000).

## B. DUE PROCESS

As an initial matter, we note that this respondent was not adjudicated separately from the children's mother at the outset of this case in 2013. Respondent raised this issue in the context of his services arguments however, we address its due process implication here. When the court took jurisdiction over SR in 2013 it was not required to separately adjudicate respondent. *In re*

*LE*, 278 Mich App 1, 17; 747 NW2d 883 (2008). In June 2014, however, our Supreme Court decided *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). *Sanders* held that "due process requires that every parent receive an adjudication hearing before the state can interfere with his or her parental rights." 495 Mich at 415. Accordingly, on December 18, 2014, respondent was separately adjudicated on the temporary custody petition for SR and later on August 13, 2015, separately adjudicated on the temporary custody petition for TR.

Respondent's direct procedural due process claim is that he was not present for all of the court hearings nor was he told that he could participate by telephone pursuant to MCR 2.004. We agree that respondent's due process rights were violated, but find that the violations were not outcome determinative and therefore, do not require reversal of the termination order.

Generally, an issue is preserved for appellate review when it was raised, addressed, and decided by the trial court. *Persinger v Holst*, 248 Mich App 499, 510; 639 NW2d 594 (2001). This issue was raised, but not addressed by the trial court. Therefore, it is not preserved. "[A]ppellate courts will consider claims of constitutional error for the first time on appeal when the alleged error could have been decisive of the outcome." *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994). Unpreserved arguments are reviewed for plain error affecting respondent's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

"Whether a child protective proceeding complied with a person's right to due process is a question of constitutional law reviewed de novo." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

"Due process applies to any adjudication of important rights." *In re LaFlure*, 48 Mich App 377, 385; 210 NW2d 482 (1973). "This Court has determined that due process requirements are much greater in termination cases than in ordinary civil actions. . . ." *In re Vasquez*, 199 Mich App 44, 49; 501 NW2d 231 (1993) (citation and quotation marks omitted). "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich at 210. "When the State moves to destroy . . . familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v Kramer*, 455 US 745, 753-754; 102 S Ct 1388; 71 L Ed 2d 599 (1982). "Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker." *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014).

"MCR 2.004 requires the court and the petitioning party to arrange for telephonic communication with incarcerated parents whose children are the subject of child protective actions." *In re Mason*, 486 Mich at 152-153 citing MCR 2.004(A) – (C). The rule provides that "[a] court may not grant the relief requested by the moving party concerning the minor child if the incarcerated party has not been offered the opportunity to participate in the proceedings, as described in this rule." MCR 2.004(F). Some of the express purposes of the telephone call are to determine whether the incarcerated parent received notice of the proceedings, and has had an opportunity to respond and participate in the proceedings. MCR 2.004(E)(1). The court must consider "the scheduling and nature of future proceedings, to the extent practicable, and the manner in which the incarcerated party may participate." MCR 2.004(E)(5). "[T]o comply with

MCR 2.004, the moving party and the court must offer the parent 'the opportunity to participate in' each proceeding in a child protective action." *Id.* at 154.

Respondent contends that he did not participate in any hearings between November 15, 2013 and January 8, 2014, from January 24, 2014 to October 30, 2014, and on the following specific dates in 2015: March 9 and 26, April 13, June 18, August 31 and October 26. Respondent also testified that he was not notified pursuant to MCR 2.004 that he was able to attend any of the missed hearings by phone.

A review of the record reveals that no hearings were held between November 15, 2013 and January 8, 2014. Between January 24, 2014 and October 30, 2014, four hearings were held. Respondent was present at a combined dispositional review permanency planning hearing on February 10, 2014. Respondent was incarcerated and not present for the other three review hearings on May 12, August 11 and September 15, 2014. A proof of service dated May 20, 2014, indicates that the order issued from the May 12 hearing was sent to the Ogemaw County Correctional Facility. Similarly, a proof of service dated August 26, 2014, indicates that the order issued from the review hearing held on August 11, 2014, was sent to Ogemaw County Jail. Also, a proof of service dated September 25, 2014, indicates that the order issued from the September 15, 2014 hearing was sent to Montgomery County Jail.

While there were no hearings on April 13 and June 18, 2015 as respondent states, respondent is correct that while he was incarcerated, he was not present at the combined dispositional review permanency planning hearings on March 9 and 26, August 31, and October 26, 2015. Similar to the 2014 hearings, there are proofs of service issued after the hearings sending the orders to respondent at a correctional facility. A proof of service dated March 17, 2015, indicates that an order issued from the March 9, 2015 hearing was sent to respondent at the Ogemaw County Jail. A proof of service dated March 26, 2015, was sent to respondent's home address. Again, respondent was not present at the October 26, 2015 hearing, but petitioner sent a writ for respondent's appearance for the termination hearing on December 2, 2015[4], on October 2, 2015, and a summons and petition to respondent at the G. Robert Cotton Correctional Facility on October 20, 2015. Additionally, respondent was not present for the combined dispositional review permanency planning hearing on June 8, 2015. However, a proof of service dated June 19, 2015, indicates that the order from the June 8, 2015 hearing was sent to respondent at the Parnell Correction Facility. The proofs of service issued after the fact indicate that the court was aware that respondent was incarcerated.

The record also contains two handwritten letters to the court from respondent while he was incarcerated asking to be present at the hearings involving his children. One letter states, "I've talked to the jail sgt [sic] about this and he informed me to have you guy's [sic] contact the jail here to set up a video appearance via polycam." In another letter, dated October 26, 2015, respondent requested to be present for all hearings pursuant to MCR 2.004. Although respondent apparently knew of his right to participate, the trial court file does not contain a signed "Acknowledgments of Rights under MCR 2.004" form for respondent like it does for the other two fathers in this case.

---

[4] This was an original termination hearing date that was adjourned.

This Court considers three factors, when determining whether a respondent in a child protective proceeding was afforded procedural due process:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993), quoting *Mathews v Eldridge*, 424 US 319, 332, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

Analysis of the above factors supports the conclusion that the trial court should have allowed respondent to participate by phone or video at each dispositional review and permanency planning hearing.

"In parental rights termination proceedings, the private interest affected is commanding." *Santosky*, 455 US at 758. Again, it is "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child." *Id*. at 753. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Id*. at 759. This interest only gives way "when it is *clear* that the natural parent cannot or will not provide a normal family home for the child." *Id*. at 767. Also involved is "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status[.]" *Id*. at 759 (citation omitted).

When, as here, an incarcerated parent is not afforded the opportunity to participate in multiple child protective proceedings, the risk of erroneously depriving that parent of his or her custodial right is high. Petitioner argues that procedural due process was satisfied because respondent was present for the pretrial adjudication for each child, for two review hearings and the termination hearing, and was sent the orders after every other hearing. The adjudication and disposition hearings are important. However, respondent has a right to participate in every permanency planning hearing, MCR 3.976(C), and dispositional review hearing, MCR 3.975(A):

> A child protective action such as this consists of a series of proceedings, including a preliminary hearing at which the court may authorize a petition for removal of a child from his home, MCL 712A.13a(2), review hearings to evaluate the child's and parents' progress, MCL 712A.19, permanency planning hearings, MCL 712A.19a, and, in some instances, a termination hearing, MCL 712A.19b. Each proceeding generally involves different issues and decisions by the court. Thus, to comply with MCR 2.004, the moving party and the court must offer the parent "the opportunity to participate in" each proceeding in a child protective action. For this reason, participation through "a telephone call" during one proceeding will not suffice to allow the court to enter an order at another proceeding for which the parent was not offered the opportunity to participate. [*In re Mason*, 486 Mich at 154.]

"[A]t each review hearing, the court is required to consider, among other things, '[c]ompliance with the case service plan with respect to services provided or offered to the child and the child's parent, ... whether the parent ... has complied with and benefited from those services,' and '[t]he extent to which the parent complied with each provision of the case service plan, prior court orders, and an agreement between the parent and the agency.' " *In re Mason*, 486 Mich at 156 citing MCL 712A.19(6)(a) and (c). In this case, many months went by in both 2014 and 2015 without the court being apprised of respondent's progress. Because petitioner had little ability to refer respondent for services, respondent would have had the most recent information and documentation regarding his progress. Respondent's absence affected both his ability to participate and the information available for the court's consideration.

Petitioner's interest in the well-being and care of SR and TR is also significant. However, that interest is not affected and the children are not exposed to further harm by allowing respondent telephonic participation in the proceedings against him. The administrative burden of having respondent sign an acknowledgement of rights form and arranging for respondent's appearance by phone or video is minimal. We reach this conclusion based on the court's efforts to provide the other two fathers with an acknowledgement of rights, its ability to secure respondent's presence for other hearings, and its process of sending respondent court orders after each hearing. Given these observations, there does not appear to be any additional administrative burden associated with allowing respondent to participate by phone or video.

Although the court and petitioner plainly violated MCR 2.004, such a violation does not entitle respondent to relief unless respondent demonstrates "that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In this case, we do not find the error to be outcome determinative. While the trial court did not have the benefit of hearing respondent's progress at each review hearing, respondent's exhibits admitted at the termination hearing reveal that his progress did not begin until July 2015, although respondent was incarcerated since March 2014. Further, the record indicates that respondent was present for a pretrial hearing on August 13, 2015, and again for a review hearing in November 2015. This Court is without the November 2015 transcript. However, in the August 2015 transcript, respondent informed the court of his progress and that he was participating in certain programs. Moreover, the court terminated respondent's rights not based on the progress he achieved in prison which is respondent's focus, but on the fact that respondent did not participate in services when not incarcerated, caused his current incarceration by violating probation while the children were in foster care, and was serving an indeterminate period of incarceration. In this case, respondent's absence from eight review hearings over a two and a half year period did not affect the outcome of respondent's case.

III. BEST INTERESTS

Respondent also argues that the court erred in finding that it was in the children's best interests to terminate his parental rights. We disagree.

This Court reviews for clear error a trial court's best-interest determination. *In re White*, 303 Mich App at 713. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights...." MCL 712A.19b(5). "[W]hether termination of parental rights

is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "[T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks and citations omitted).

Initially, we may consider this issue as not properly before the Court because respondent failed to raise it in his statement of questions presented. *In re BKD*, 246 Mich App 212, 218; 631 NW2d 353 (2001). Respondent's statement of the questions presents only a challenge to the statutory grounds for termination. Additionally, this Court may consider the issue abandoned for respondent's failure to fully brief the issue. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."). Respondent's argument that termination is not in the best interests of the children is a conclusory, single statement: "Clearly, it is not in the best interest of the minor child [sic] to terminate the parental rights of the respondent. He should be given additional time to complete services as well as to see if he is released on parole soon."

Although this Court need not consider the issue, the trial court record contains sufficient evidence to sustain the court's conclusion that termination was in the children's best interests. At the time of the termination hearing, SR was three and a half years old and had been in foster care for over two years, and TR was eighteen months old and had been in foster care since he was three months old. There was testimony from respondent's family members that SR was bonded to respondent. However, no bond existed with TR. Although respondent could have been released from prison as early as January 2016, he was denied parole and remains incarcerated[5] with a maximum release date of February 19, 2034. It was not error for the court to conclude that termination of respondent's parental rights was in the best interests of SR and TR. The trial court noted that had respondent followed the court's orders and terms of probation, he would have been on track with petitioner's original goal of reunification. Respondent's noncompliance resulted in his children languishing in foster care. Despite respondent's efforts to rehabilitate in prison, his uncertain release date made him an unviable option for the court when planning a stable and permanent future for SR and TR given their young ages.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

---

[5] MDOC, *Offender Tracking Information System (OTIS)*, https://mdocweb.state.mi.us/OTIS2/otis2.html (accessed September 30, 2016).