PERSINGER v HOLST

Docket No. 224635. Submitted August 7, 2001, at Grand Rapids. Decided
December 4, 2001, at 9:05 A.M. Leave to appeal sought.

Richard D. Persinger, as conservator of the estate of Helen Fuite, a
legally incapacitated widow in her eighties, brought an action in
the Ottawa Circuit Court against attorney Richard C. Holst, alleging
legal malpractice. Before a probate court declared Fuite to be
legally incapacitated, the defendant had drafted, and Fuite had exe-
cuted, a will that bequeathed all her property to Mark Hall, a dura-
ble general power of attorney that designated Hall as her attorney
in fact, and deeds that conveyed realty to Hall. Subsequent pro-
ceedings in the probate court had resulted in Persinger's appoint-
ment as conservator of Fuite's estate, in the setting aside of the
will, and in the entry of a court order directing Hall to deed the
realty back to Fuite and to repay her certain amounts of money.
The circuit court, Calvin L. Bosman, J., granted summary disposi-
tion for the defendant. The plaintiff appealed, challenging the cir-
cuit court's determinations that an attorney has no duty to dissuade
a vulnerable client from her choice of attorney in fact and that,
because mental competency is not required for the execution of a
power of attorney, the defendant had no duty to prevent Fuite from
executing the power of attorney.

The Court of Appeals *held*:

1. Mental competency of the principal at the time of execution of
a power of attorney is required. Such a requirement comports with
principles of agency that require parties to an agency relationship
to consent to the creation of the relationship and that recognize the
principal's right of control over the conduct and actions of the
agent, conduct and actions the principal is both bound by and lia-
ble for. MCL 700.5501, 700.5504(2), 700.5505(1), and 700.5506,
which govern powers of attorney, clearly imply the requirement
that the principal be mentally competent at the time the power of
attorney is executed.

2. An attorney has a duty to use reasonable skill, care, discretion,
and judgment in the provision of legal services. In this case, the
defendant fulfilled his duty to use reasonable care and skill to draft
a power of attorney that comported with Fuite's intentions and

legally accomplished her objectives. The defendant was under no duty to ensure that Fuite designated an appropriate attorney in fact. The defendant acted as an attorney of ordinary learning, judgment, or skill would have acted with respect to the issue of Fuite's mental competency at the time she executed the power of attorney. The defendant made reasonable inquiry into Fuite's understanding of the nature and legal effect of the power of attorney, the defendant did not have actual knowledge of Fuite's incompetence, and there were no extraordinary circumstances that reasonably would have led the defendant to believe that Fuite was incompetent.

Affirmed.

1. ATTORNEY AND CLIENT — MALPRACTICE.

    A plaintiff who claims legal malpractice must plead and prove the existence of an attorney-client relationship, negligence in the legal representation of the plaintiff, that the negligence was a proximate cause of an injury, and the fact and extent of the injury alleged.

2. AGENCY — POWERS OF ATTORNEY.

    A power of attorney is a written instrument by which a principal authorizes and appoints an agent, known as an attorney in fact, and delegates to the agent the power to perform acts on behalf of, in the place of, and instead of the principal; the principal must be mentally competent at the time of the execution of the power of attorney.

3. ATTORNEY AND CLIENT — MALPRACTICE — STANDARD OF CARE.

    Attorneys must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.

*Floyd H. Farmer, Jr.*, for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani* and *James R. Redford*), for the defendant.

Before: HOLBROOK, JR., P.J., and CAVANAGH and METER, JJ.

CAVANAGH, J. Plaintiff, Richard D. Persinger, conservator of the estate of Helen Fuite, appeals as of right from the trial court's grant of summary disposition in favor of defendant in this legal malpractice action. We affirm.

In January 1996, defendant, Richard C. Holst, an attorney, was contacted by Mark Hall (Hall) regarding estate planning services on behalf of Helen Fuite, a widow in her eighties. Hall and his brother, Tim Hall, had previously been Holst's clients. Subsequently, Holst drafted and Fuite executed a will, a durable general power of attorney, and at least two deeds. The will named Hall the sole beneficiary of Fuite's estate to the explicit exclusion of her relatives; the power of attorney designated Hall as Fuite's attorney in fact effective as of the date of execution; and two deeds transferred two parcels of property from Fuite to Hall and herself as joint tenants with rights of survivorship.

It is undisputed that Hall abused his powers as Fuite's attorney in fact, in particular with regard to Fuite's financial affairs. Consequently, in April 1996, probate proceedings were initiated and Persinger was appointed conservator of Fuite's estate. Persinger initiated additional probate proceedings regarding the dispositions made by Fuite in January 1996. The proceedings apparently culminated in an order and judgment that provided, in pertinent part, for Hall to quitclaim the real properties back to Fuite, for the will to be set aside, for money to be paid to Fuite by Hall and his brother, and permanently restrained Hall and his brother from further contact with Fuite. Thereafter, the present action was commenced against defendant alleging several claims, including legal malpractice, with regard to the "estate planning services" rendered to Fuite. Following defendant's motions for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), the trial court dismissed all of plaintiff's claims.

On appeal, plaintiff argues that the trial court erred in holding that an attorney has no duty to dissuade a vulnerable client from her choice of attorney in fact when the attorney knows that the proposed agent is incapable of handling the client's affairs. Plaintiff further argues that the trial court erred in holding that mental competency is not required to execute a power of attorney and, consequently, that defendant had no duty to prevent Fuite from executing the document. This Court reviews de novo a trial court's grant or denial of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

A claim of legal malpractice requires the plaintiff to plead and prove the following elements: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995), quoting *Coleman v Gurwin*, 443 Mich 59, 63; 503 NW2d 435 (1993). If there is an attorney-client relationship, a duty to use and exercise reasonable care, skill, discretion, and judgment with regard to the representation of the client exists as a matter of law. *Simko*, *supra* at 655-656, quoting *Eggleston v Boardman*, 37 Mich 14, 16 (1877). In this case, it is undisputed that an attorney-client relationship existed between Fuite and Holst; therefore, the issue is whether Holst breached a duty by failing to dissuade Fuite from her choice of agent or by permitting Fuite to execute a power of attorney. This issue appears to present questions of first impression in Michigan.

Generally, a power of attorney is a written instrument by which a principal authorizes and appoints an agent, known as an attorney in fact, and delegates to the agent the power to perform acts on behalf of, in the place of, and instead of the principal. See 3 Am Jur 2d, Agency, §§ 1-3, 23, pp 509-511, 528; Black's Law Dictionary (7th ed), p 1191. It is a legal document recognized by law as evidence of an agency relationship between the principal and the agent. See, e.g., MCL 450.4103(3), 565.36, 700.1103(a), 700.5103, 700.5502, 700.5504; *VanderWall v Midkiff*, 166 Mich App 668, 677; 421 NW2d 263 (1988). A firmly embedded principle in our jurisprudence is that legal documents must be executed by one possessing the mental competence to reasonably understand the nature and effect of his action.

Established law is replete with examples of this competency requirement, particularly in the area of contract law. Persons entering into business contracts and settlement agreements, opening bank accounts and changing insurance policy beneficiaries must, generally, possess "sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged." *In re Erickson Estate*, 202 Mich App 329, 332; 508 NW2d 181 (1993); see, also, *Bannasch v Bartholomew*, 350 Mich 546, 554; 87 NW2d 78 (1957); *Howard v Howard*, 134 Mich App 391, 396; 352 NW2d 280 (1984). Similarly, persons executing deeds of conveyance must have

> sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent and value of his property, and how he wanted to dispose of it, and to keep these facts in his mind long enough to plan and effect the conveyances in question without prompting

and interference from others. [*Barrett v Swisher*, 324 Mich 638, 641; 37 NW2d 655 (1949), quoting *Hayman v Wakeham*, 133 Mich 363; 94 NW 1062 (1903).]

A person executing a will must have testamentary capacity, i.e., " 'be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make.' " *In re Vollbrecht Estate*, 26 Mich App 430, 434; 182 NW2d 609 (1970), quoting *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW2d 436 (1953). Consistent with this longstanding precedent, as well as the purpose of a power of attorney, statutory inferences, and sound public policy, we hold that powers of attorney must be executed by mentally competent persons.

A primary purpose of a power of attorney is to evidence the delegation of authority to perform particular legal acts, which the principal could personally perform, to an appointed agent. See 3 Am Jur 2d, Agency, § 23, p 528. Consequently, the principles governing the law of agency are applicable to legal issues involving powers of attorney. See *VanderWall, supra*. A fundamental requirement of such an agency relationship is that the parties to the agreement consent to its creation. See 3 Am Jur 2d, Agency, § 17, p 521. Similarly, an essential component of the relationship is the principal's right to control, at least at some point,[1] the conduct and actions of his agent. See *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich 540, 557-558; 581

---

[1] A principal may not be capable of exerting control over an agent who is operating under a properly executed durable power of attorney if the principal becomes incapacitated at some time following its execution.

NW2d 707 (1998); *People v Konrad,* 449 Mich 263, 280-281; 536 NW2d 517 (1995). These consent and control elements are significant because the principal is bound by, and liable for, the agent's lawful actions performed under the auspices of the principal's actual or apparent authority. *Id.*; see, also, e.g., MCL 700.5502, 700.5504. Consequently, requiring that the principal be mentally competent to consent to, render a degree of control over, and appreciate the significance and consequences of the resulting agency relationship is consonant with the purpose of a power of attorney.

Further, review of related statutes supports the conclusion that the principal must be mentally competent at the time the power of attorney is executed. MCL 700.5501 provides, in pertinent part:

> A durable power of attorney is a power of attorney by which a principal designates another as the principal's attorney in fact in writing and the writing contains the words "This power of attorney is not affected by the principal's *subsequent disability or incapacity,* or by the lapse of time", or "This power of attorney is effective upon the disability or incapacity of the principal", or similar words showing the principal's intent that the authority conferred is exercisable notwithstanding the principal's *subsequent disability or incapacity* . . . . [Emphasis added.]

MCL 700.5504(2) provides, in pertinent part:

> The disability or incapacity of a principal who has previously executed a written power of attorney that is not a durable power does not revoke or terminate the agency as to the attorney in fact or other person who, without actual knowledge of the *principal's disability or incapacity,* acts in good faith under the power. An action taken as provided in this subsection, unless otherwise invalid or unenforce-

able, binds the principal and his or her successors in interest. [Emphasis added.]

MCL 700.5505(1) provides, in pertinent part:

> If an attorney in fact acts in good-faith reliance on a power of attorney, durable or otherwise, and executes a sworn statement stating that, at the time of the action, the attorney in fact did not have actual knowledge of the principal's death, *disability, or incapacity* or of the power's termination by revocation, the sworn statement is, in the absence of fraud, conclusive proof of the power's nontermination or nonrevocation.

Similarly, MCL 700.5506, pertaining to the designation of a patient advocate for purposes of medical treatment, custody, and care decisions, specifically requires the patient to be of sound mind at the time the designation is made. These statutes clearly imply the requirement that the principal be mentally competent at the inception of the agency relationship, i.e., at the time the power of attorney is executed.

Finally, requiring the principal of a power of attorney to be mentally competent at the time of its execution advances important public policy concerns. We are hardpressed to conceive of a more effective and efficient means by which to devastate and destroy the estate of a vulnerable person than through a durable general power of attorney. Sanctioning the execution of a power of attorney by a mentally incompetent principal would give license to those who have the power or inclination to coerce, cajole, or dupe such a person into effectively relinquishing rights to their property, finances, and other assets with minimal effort. Considering the nature, breadth, and consequences of a power of attorney, public policy inter-

ests are served by the requirement that the principal have the ability to engage in thoughtful deliberation and use reasonable judgment with regard to its formation.

Although we have concluded that powers of attorney must be executed by mentally competent principals, we must still consider the extent of an attorney's duty with regard to the principal's choice of agent and mental competency to execute the document.

In this case, plaintiff first argues that defendant had a duty to dissuade Fuite from her choice of agent because defendant knew the proposed agent was incapable of handling Fuite's affairs.[2] Plaintiff alleges that defendant's knowledge that Hall was "an illiterate, financial incompetent" gave rise to an obligation to "prevent the fleecing" of Fuite. We disagree and decline to impose such an extraordinary duty on defendant.

An attorney has a duty to use reasonable skill, care, discretion, and judgment in the provision of legal services. *Simko, supra* at 656. "An attorney is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession." *Id.* In this case, defendant had a duty to use reasonable care and skill to draft a power of attorney that comported with Fuite's intentions and legally accomplished her objectives. We have failed to ascertain any authority that would impose the additional burden of

---

[2] Although plaintiff attempts to raise several other issues in the brief on appeal, including apparently a conflict of interest claim, our review is limited to the issues raised in the statement of questions presented. See MCR 7.212(C)(5); *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001).

ensuring that Fuite, the principal, designated an appropriate agent. See 3 Am Jur 2d, Agency, § 13, p 519 ("As a rule, any person has the capacity to act for another . . . .").

The lack of such authority is likely the consequence of several inherent problems with the proposition, including that such a burden would impermissibly widen the scope of duty to infinite proportions. An attorney could then be liable for allegedly failing to challenge a client's choice of business partner, personal representative, or other person to whom a client chooses to entrust or align his personal interests. We decline to posit the determination of an attorney's professional competence on the nebulous contingency of his alleged knowledge of the proposed agent or alleged failure to dispense his subjective opinion regarding the principal's choice. A mentally competent principal has the superior knowledge and ability to choose an agent that best meets her expectations, needs, and desires. The responsibility to make such a decision cannot be conveniently denied and the burden shifted because the principal made a poor choice. Therefore, as a matter of law, defendant did not have a legal duty to prevent Fuite from designating the agent of her choice and the trial court properly dismissed this claim. See MCR 2.116(C)(8).

Next, plaintiff argues that defendant committed legal malpractice by permitting Fuite to execute the power of attorney because she was allegedly mentally incompetent at the time of its execution. We disagree. Plaintiff has failed to set forth, and we have failed to locate, law from this or any other jurisdiction that supports plaintiff's claim on the asserted theory. Nev-

ertheless, in this case, we find plaintiff's argument without merit.

Although plaintiff attempts to transform this issue into an adjudication of Fuite's competency at the time the power of attorney was executed, our focus is limited, by the claim raised, to defendant's actions with regard to Fuite's execution of the document. An attorney has a duty to act as an attorney of ordinary learning, judgment, or skill under the circumstances using reasonable professional judgment. See *Simko, supra* at 659. Although that duty conceivably applies to the execution of legal documents, an attorney cannot justifiably be deemed an insurer of a client's mental competency.

In this case, defendant made reasonable inquiry into Fuite's understanding of the nature and legal effect of the power of attorney that she requested before its execution. Although Fuite was subsequently adjudicated incompetent, at the time she executed the power of attorney defendant exercised reasonable professional judgment with regard to its execution. Further, even if defendant was mistaken, "mere errors in judgment by a lawyer are generally not grounds for a malpractice action." *Id.* at 658. This is not a case where defendant had actual knowledge that Fuite was incompetent. Similarly, the record fails to reveal overt or unmistakable signs of incompetency, or other extraordinary circumstances that would reasonably lead defendant to conclude that Fuite was incapable of understanding the nature and consequences of her actions. Therefore, although the trial court dismissed this claim on different grounds, the claim was properly dismissed. See MCR 2.116(C)(10); *Samuel D*

*Begola Services, Inc v Wild Bros*, 210 Mich App 636, 640; 534 NW2d 217 (1995).

Finally, plaintiff argues that defendant breached an implied contract to notify Fuite's prior attorney of the changes in her estate plan. This claim was not raised before and addressed by the trial court; therefore, it is not preserved for appellate review. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Further, after review of the ambiguous conversation on which the claim is predicated, we conclude that plaintiff's argument is without merit.

Affirmed.