# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* GUARDIANSHIP OF DAVID P. VANPOPPELEN.

---

DENNIS J. VANPOPPELEN,

        Petitioner-Appellee,

v

IVY S. VANPOPPELEN and WYATT R. VANPOPPELEN,

        Appellants,

and

MARTIN J. BROSNAN, Guardian for DAVID P. VANPOPPELEN,

        Appellee.

UNPUBLISHED
December 4, 2018

No. 340224
Macomb Probate Court
LC No. 2017-223825-GA

---

*In re* CONSERVATORSHIP OF DAVID P. VANPOPPELEN.

---

VINCENT W. VANPOPPELEN,

        Petitioner-Appellee,

v

IVY S. VANPOPPELEN and WYATT R. VANPOPPELEN,

        Appellants,

and

No. 340226
Macomb Probate Court
LC No. 2017-223826-CA

-1-

MARTIN J. BROSNAN, Conservator for DAVID
P. VANPOPPELEN,

        Appellee.

---

Before:  MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

The probate court rejected the efforts of David VanPoppelen's adult children to be named as his guardian and conservator after he was diagnosed with early onset dementia, finding them "just too young" and at risk of being "pushed, and prodded, and pulled" by other relatives. Instead, the court appointed an unrelated third party. While the probate court's concern for the welfare of the ward's adult children is commendable, the existing record does not support their disqualification. Accordingly, we vacate the court's order appointing an independent third party as guardian and conservator and remand for further consideration of the children's suitability to serve.

## I. BACKGROUND

In 2016, David was diagnosed with early onset dementia. He continued to live alone and remained employed until March 2017, when June VanPoppelen, David's ex-wife and the mother of their children, 26-year-old Wyatt and 19-year-old Ivy, brought David to live with her in the couple's former marital home. June arranged for David to execute a durable power of attorney, which she used to sell his condominium. She also changed at least one of the passwords on his financial accounts. David's brothers (Vincent and Dennis VanPoppelen) believed that June was preventing David from seeing them outside her presence, and suspected that she was taking advantage of David's incapacitated condition.[1] Vincent and Dennis filed petitions for conservatorship and guardianship, respectively. June, Ivy, and Wyatt each filed competing petitions.

The court conducted an evidentiary hearing and took testimony from Vincent, Dennis, Chris, June, Wyatt, Dennis's wife Debbie VanPoppelen, and Chris's wife Pat VanPoppelen; at the time of the hearing, June, Wyatt and Ivy were unrepresented by counsel. The evidence revealed significant distrust between June and David's brothers. June claimed that on the advice of her prior counsel, she prohibited the brothers from visiting David. The brothers expressed fears that June would use David's assets to help pay the significant college debt that she and the children had accumulated. Despite the brothers' antipathy toward June, they agree that she provided David with good care and that he was comfortable, happy and stable in her home.

---

[1] David's brother Chris VanPoppelen apparently did not share his brothers' concern that June was trying to take advantage of David.

Wyatt was called as an adverse witness by counsel for Dennis and Vincent. His brief testimony established that he held a full-time job, lived on his own in Saline, and had $40,000 in college debt. Ivy did not testify. According to their affidavits, Wyatt graduated from the University of Michigan with a degree in Biopsychology, Cognition and Neuroscience. In 2017, Ivy was a sophomore at Alma College. Ivy and Wyatt sought appointment as co-guardians and co-conservators of their father. Their uncles agreed that both are "great" kids, but felt that it would be too difficult for them to manage the necessary work of a guardian or conservator and voiced apprehension that they would be subject to "undue pressure" from June.

The court ultimately invalidated June's power of attorney because David was not competent to execute it in March 2017. The court found that June was not an appropriate choice for fiduciary because she interfered in David's relationship with his brothers and David needed the support of all family members. The court also noted that June refused to definitively promise that she would continue caring for David if his brothers were named guardian and conservator.

The court's full explanation for not naming Wyatt or Ivy as David's guardian and conservator was:

> Regarding Ivy and Wyatt, they both seem like lovely people. We've heard testimony from everyone that they're good kids, and I have not a doubt how much they love their father. However, I think they are inappropriate at this time just due to their young age. And, the fear that this Court has that they're going to [be] put in the middle. We clearly have a lot of contention on both sides. And, I do not want to see two young people being pushed, and prodded, and pulled.

> Therefore, I am finding that Ivy and Wyatt are not appropriate at this time.

The court opined that "Dennis and Vincent would be most appropriate as Guardian and Conservator," but concluded that "we need to have a Public Administrator" because "the contentious nature of what's going on here" would "cause so much upheaval that it's just going to topple, and everything's going to be turned upside down." The court appointed an independent third party, Martin Brosnan, as David's guardian and conservator. The record reflects that June continues to care for David, and David remains in her home.

## II. ANALYSIS

Ivy and Wyatt appeal, claiming that either they or June should have been named as David's guardian and conservator.

> We review the probate court's dispositional rulings for an abuse of discretion. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. We review the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. We review de novo any statutory or constitutional interpretation by the

probate court. [*In re Redd Guardianship*, 321 Mich App 398, 403-404; 909 NW2d 289 (2017) (cleaned up)[2].]

In reviewing the probate court's ruling, we must defer to its findings "on matters of credibility" and "give broad deference" to the lower court's findings guided by its opportunity to view and assess the witnesses first hand. *Id*. at 412 (cleaned up).

"The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., establishes an order of priority that must be followed when a probate court selects a guardian and conservator for a protected person." *In re Gerstler Guardianship/Conservatorship*, ___ Mich App ___; ___ NW2d ___ (Docket No. 338935, issued June 5, 2018), slip op at 1. MCL 700.5106 provides for the appointment of an independent third-party guardian or conservator, in relevant part, as follows:

> (1) Subject to subsections (2) and (3), the court may appoint or approve a professional guardian or professional conservator, as appropriate, as a guardian or conservator under this act. . . .
>
> (2) The court shall only appoint a professional guardian or professional conservator as authorized under subsection (1) if the court finds on the record all of the following:
>
> (a) The appointment of the professional guardian or professional conservator is in the . . . incapacitated individual's . . . best interests.
>
> (b) *There is no other person that is competent, suitable, and willing* to serve in that fiduciary capacity in accordance with [MCL 700.5212, MCL 700.5313, or MCL 700.5409]. [Emphasis added.]

MCL 700.5313 establishes priority for the appointment of a guardian as follows:

> (1) The court may appoint a competent person as guardian of a legally incapacitated individual. The court shall not appoint as a guardian an agency, public or private, that financially benefits from directly providing housing, medical, mental health, or social services to the legally incapacitated individual. . . .
>
> (2) In appointing a guardian under this section, the court shall appoint a person, *if suitable and willing* to serve, in the following order of priority:

---

[2] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

(a) A person previously appointed, qualified, and serving in good standing as guardian for the legally incapacitated individual in another state.

(b) A person the individual subject to the petition chooses to serve as guardian.

(c) A person nominated as guardian in a durable power of attorney or other writing by the individual subject to the petition.

(d) A person named by the individual as a patient advocate or attorney in fact in a durable power of attorney.

(3) If there is no person chosen, nominated, or named under subsection (2), or if none of the persons listed in subsection (2) are *suitable or willing* to serve, the court may appoint as a guardian an individual who is related to the individual who is the subject of the petition in the following order of preference:

(a) The legally incapacitated individual's spouse. . . .

(b) An adult child of the legally incapacitated individual.

(c) A parent of the legally incapacitated individual. . . .

(d) A relative of the legally incapacitated individual with whom the individual has resided for more than 6 months before the filing of the petition.

(e) A person nominated by a person who is caring for the legally incapacitated individual or paying benefits to the legally incapacitated individual.

(4) If none of the persons as designated or listed in subsection (2) or (3) are *suitable or willing to serve*, the court may appoint any competent person who is suitable and willing to serve, including a professional guardian as provided in [MCL 700.5106]. [Emphasis added.]

Similarly, MCL 700.5409 establishes priority for the appointment of a conservator and provides:

(1) The court may appoint an individual, a corporation authorized to exercise fiduciary powers, or a professional conservator described in [MCL 700.5106] to serve as conservator of a protected individual's estate. The following are entitled to consideration for appointment in the following order of priority:

(a) A conservator, guardian of property, or similar fiduciary appointed or recognized by the appropriate court of another jurisdiction in which the protected individual resides.

-5-

(b) An individual or corporation nominated by the protected individual if he or she is 14 years of age or older and of sufficient mental capacity to make an intelligent choice, including a nomination made in a durable power of attorney.

(c) The protected individual's spouse.

(d) An adult child of the protected individual.

(e) A parent of the protected individual . . . .

(f) A relative of the protected individual with whom he or she has resided for more than 6 months before the petition is filed.

(g) A person nominated by the person who is caring for or paying benefits to the protected individual.

(h) If none of the persons listed in subdivisions (a) to (g) are *suitable and willing* to serve, any person that the court determines is suitable and willing to serve.

(2) . . . If persons have equal priority, the court shall select the person the court considers best qualified to serve. Acting in the protected individual's best interest, the court may pass over a person having priority and appoint a person having a lower priority or no priority.

MCL 700.5313(2)(b) and (c) permit a person to choose his or her guardian. MCL 700.5313(2)(d) and MCL 700.5409(1)(b) give high priority in guardianship and conservatorship actions to individuals designated by the incapacitated person "as a patient advocate" or as an "attorney in fact in a durable power of attorney." David told his appointed guardian ad litem that he wanted June to serve as his guardian and conservator, not his brothers. Moreover, the "general power of attorney" executed by David and nominating June comports with statutory requirements. However, in order to be legally valid, the individual executing a power of attorney must "possess[] the mental competence to reasonably understand the nature and effect of his action." *Persinger v Holt*, 248 Mich App 499, 503; 639 NW2d 594 (2001). And the probate court did not err in finding that David was not competent to execute a power of attorney in March 2017. He similarly was incompetent to informally select his fiduciary.

The probate court considered the opinions of three doctors in reaching its conclusion. Dr. Cesar Hidalgo diagnosed David with early onset dementia in February 2016. Neurological psychologist Michael Vredevoogd diagnosed David with "a significant dementia" in December 2016. Dr. Vredevoogd's testing showed David to have an IQ of 63, placing him in the mildly to moderately impaired range. He found deficits in David's memory, executive and self-supervisory, and verbal functions. Vredevoogd concluded, "Given the deficits noted I would strongly recommend that the family gain guardianship to promote appropriate medical, legal and financial decision making. I have concerns about the patient living safely and independently given the level of deficits noted." In March 2017, David was nearly terminated from his employment after he was late for several days because he had not changed his clock to reflect the

start of daylight savings time. It was then that June and the children took David on a weekend trip and he executed a power of attorney presented by June.

In July 2017, psychologist Terry Rudolph conducted an independent evaluation, diagnosing David with a "severe" or "profound level" of dementia. Rudolph found David to be "a very poor historian," who "was unable to give consistent and factual information about his family of origin, marital status, current living situation, his work, or any estate planning that he may have undertaken." Although David "was oriented to person," he could not identify his heirs, sources of incomes, or assets. Ultimately, Rudolph opined that David lacked "testamentary capacity and could not make an informed decision about who he would want to handle his affairs."

Based on these medical and psychological opinions, formed close in time to David's execution of the power of attorney and request to have June named as his guardian and conservator, we discern no error in the probate court's finding that he lacked the mental competence necessary to name a power of attorney, guardian, or conservator. Accordingly, June lacked any priority to serve in these roles.

Pursuant to MCL 700.5313(3)(b) and MCL 700.5409(1)(d), David's adult children, Ivy and Wyatt, were then in the top priority position to serve as David's guardian and conservator. Yet, the probate court passed over them in favor of a hired custodian.

> MCL 700.5106(2) provides that, before appointing a professional guardian or a professional conservator, a probate court must find that the appointment of a professional fiduciary is in the incapacitated person's best interests and that there is no other person who is competent, suitable, and willing to serve in that fiduciary capacity in accordance with, as relevant here, MCL 700.5313 or MCL 700.5409. MCL 700.5313(4) similarly allows appointment of a professional guardian only if none of the persons listed in MCL 700.5313(2) or (3) are suitable or willing to serve. With respect to the appointment of a conservator, MCL 700.5409(2) likewise allows for departure from the statutory order of priority in the best interests of the protected individual, and MCL 700.5409(1)(h) allows appointment of any person that is suitable and willing to serve if none of the persons listed in MCL 700.5409(1)(a)-(g) are suitable and willing to serve. [*Gerstler*, ___ Mich App at ___, slip op at 9-10.]

The probate court first found Ivy and Wyatt "unsuitable" to serve in these roles "just due to their young age." The age of an adult is not a proper ground for disqualification under EPIC. As adults, Ivy and Wyatt are fully qualified to serve as guardians and conservators for their father. MCL 700.5313(3)(b); MCL 700.5409(1)(d). Adulthood is all that is required under EPIC.

The probate court additionally expressed "fear" that Ivy and Wyatt would be "put in the middle," and disqualified them in part because the court did "not want to see two young people being pushed, and prodded, and pulled." Unlike their "young age," whether Ivy and Wyatt were capable of performing effectively as David's guardians or conservators was a legitimate concern. And we appreciate the court's desire to protect Ivy and Wyatt from possible intra-family

-7-

squabbling. However, no evidence supported that Wyatt and Ivy would be unsuitable for the positions or unable to manage the tasks required of them.

We considered the meaning of the term "suitable" to serve in *Redd*, 321 Mich App at 407. Looking to the responsibilities of a guardian in the statutes, this Court first reasoned "that the guardian's focus of concern must be on the ward, that decisions made on behalf of the ward must be in the interests of the ward and not the guardian, and that the guardian must be qualified to achieve those purposes set forth in EPIC." *Id*. This Court then looked to the definition of "suitable" in *Black's Law Dictionary* (8th ed): "fit and appropriate for [its] intended purpose," and *Merriman Webster's Collegiate Dictionary* (11th ed): "adapted to a use or purpose," or "able/qualified." *Redd*, 321 Mich App at 407-408. "Taken together," the *Redd* Court concluded, "the statutory context and guidance from dictionaries confirm that a 'suitable' guardian is one who is qualified and able to provide for the ward's care, custody, and control." *Id*. at 408. And the probate court must determine whether an individual in the mandatory line of priority is suitable to serve by a preponderance of the evidence. *Id*. at 410.

That Ivy and Wyatt would be "put in the middle" of possible disagreements between their mother and uncles was insufficient, standing alone, to disregard their statutory priority for appointment. Whomever the court appointed, including a third party, would be "put in the middle" of any disputes between June and David's brothers. And the existence of difficult, challenging family dynamics is not confined to the VanPoppelen clan. Before eliminating Wyatt and Ivy as candidates for appointment based on this reality, the court was required to determine whether either or both were able to provide for their father's care, custody, and control despite any pressures that might be brought to bear. No evidence supports that these two college-educated young people would be unable to perform the tasks that would be required of them.

Wyatt lives independently.[3] Ivy attends college. Both expressed a strong desire to serve, and both are competent. The testimony revealed no hint that either lacks an ability to make reasoned and rational choices furthering the best interests of their father, even if confronted with differing points of view. While the uncles and the probate court speculated that June might attempt to interfere in David's management, the uncles presented no grounds discrediting Ivy's and Wyatt's suitability to serve other than their youth and relative inexperience with life.

Our dissenting colleague interprets the probate court's brief ruling as a conclusion that Wyatt and Ivy are, in fact, incapable of managing their father's day-to-day needs and independently assessing financial choices. We do not read the court's rather truncated bench opinion quite as broadly. Perhaps there are facts of record substantiating that neither Ivy nor Wyatt are able to suitably provide for their father. On remand, the probate court should identify those facts in light of the current circumstances of the parties. As the probate court is undoubtedly aware, EPIC permits the court to name David's children as his co-guardians and to

---

[3] According to Vincent, June continues to pay Wyatt's cell phone and car insurance bills. While this is a fact that should be taken into account regarding Wyatt's suitability to serve as his father's conservator, we note that it is not particularly unusual for parents to pay these expenses for young adults; often doing so is cost-effective.

appoint an independent person as conservator. Alternatively, the court could appoint the children as temporary guardians and conservators and require oversight and frequent reports. We leave those choices to the probate court, and require only that its decision set forth the facts on which it is based.

Indisputably, a public administrator possesses more experience and expertise than Ivy or Wyatt, and might be less resistant to pressure from one side or the other. But the priorities established under EPIC do not permit the probate court to bypass adult children on this ground alone. The Legislature has directed that unless incompetent or unsuited to serve, the adult children of an incapacitated parent must be appointed in lieu of a professional. *Gerstler*, slip op at 1, 11. Simply put, there is no weighing involved; by listing the priorities, the Legislature eschewed a "best interests" approach in favor of a decision process anchored in family relationships. That these adult children might be confronted with conflicting views, or that more experienced individuals might be found, does not disqualify them from serving their father as his guardians or conservators. And at this juncture, the record reflects nothing more.

Because the probate court based its decision on an improper factor ("young age") and speculation rather than actual evidence of insuitability, we vacate its order appointing an independent guardian and conservator, and remand for further proceedings. On remand, the probate court should reevaluate Ivy's and Wyatt's suitability to serve as guardian and conservator based on evidence of their individual and collective abilities (or inabilities) to undertake responsibility for their father's care and control. Rather than hypothesizing potential negative consequences that might attend Ivy's and Wyatt's appointment, the probate court should reference and cite facts of record substantiating Ivy's and Wyatt's unsuitability before again appointing a third-party guardian and conservator.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher