*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

CARRIE HARRIS REYNOLDS,

UNPUBLISHED
December 22, 2022

Plaintiff-Appellant,

v

No. 359803
Macomb Probate Court
LC No. 2020-233305-CZ

DONALD VAN DAN STEENE, Trustee of the
REVOCABLE LIVING TRUST OF DONALD W.
REYNOLDS,

Defendant-Appellee.

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this case involving a dispute over real property, plaintiff, Carrie Harris Reynolds, appeals as of right the probate court opinion and order granting summary disposition to defendant, Donald Van Dan Steene, Trustee of the Revocable Living Trust of Donald W. Reynolds ("the Trust").[1] On appeal, plaintiff argues that the probate court erred in concluding that plaintiff failed to demonstrate a genuine issue of material fact to support her challenge to the testamentary capacity of the settlor of the Trust, decedent, Donald W. Reynolds, at the time that decedent amended the Trust agreement to effectively disinherit plaintiff. Plaintiff's arguments are unconvincing. We affirm.

This case arises out of a dispute over real property that was owned by the Trust at times relevant to this appeal. The settlor of the Trust was decedent. In late 2015, decedent's wife of more than 60 years, Susan Reynolds ("Susan"), died after a long battle with Alzheimer's disease. In 2016, Van Dan Steene, who was decedent's longtime friend and financial advisor, arranged for caregivers to assist decedent with errands, shopping, and personal needs. One of those caregivers

---

[1] We will refer specifically to "the Trust" and "Van Dan Steene" by name when appropriate, such as when summarizing the factual history of the case and describing the roles of various persons and entities. In other contexts, such as when summarizing the procedural history of the case or the parties' positions on various matters, we will use the term "defendant."

was plaintiff, who formed a close bond with decedent. At the time, plaintiff was 37 years old, and decedent was 90 years old. In order to assist plaintiff and her then-husband, Nathan Harris ("Nathan"), decedent bought a house located at 50097 Dove Lane, Chesterfield, Michigan ("the Dove property"), and sold it to plaintiff and Nathan on favorable terms by land contract. Under the land contract, plaintiff and Nathan did not have to make a down payment, and they were to pay the $220,000 purchase price in monthly installments of $813.16, with interest charged at 2% per annum. From the outset, plaintiff and Nathan were frequently in default under the land contract. Decedent also purchased a new car for plaintiff. There were reports to Adult Protective Services that plaintiff and decedent had a very close or intimate relationship, as well as allegations that plaintiff was using decedent to obtain gifts. Plaintiff was terminated by the company that employed her as a caregiver.

Plaintiff and Nathan were divorced on March 8, 2018. On March 20, 2018, plaintiff brought a wedding officiant to decedent's home, and plaintiff and decedent married each other. Shortly after the wedding, plaintiff became employed as decedent's caregiver so that she could earn income to make payments under the land contract for the Dove property. Van Dan Steene testified that, after the marriage, he noticed a lot more spending from decedent's account, particularly on expenses for the Dove property.

Van Dan Steene testified that, at some point between July 2018, and September 2018, he attended a meeting with plaintiff and decedent, during which plaintiff was putting pressure on decedent to change the terms of the Trust agreement with respect to the Dove property as well as decedent's residential property, 17975 Redwood Drive, Macomb Township, Michigan ("the Redwood property"). In particular, the decision at that time was for the Trust agreement to be revised so that both the Dove property and the Redwood property would go to plaintiff upon decedent's death. In order to effectuate this decision, the Redwood property was acquired by the Trust from the Revocable Living Trust of Susan Reynolds, i.e., the trust of decedent's late wife, and a fiduciary deed was executed effectuating that transfer. Then, on September 24, 2018, decedent executed a restatement of his Trust agreement, bequeathing to plaintiff the Dove property and the Redwood property, and forgiving any unpaid balance of the land contract for the Dove property upon decedent's death, although the bequest of the Dove property would be deemed null and void if plaintiff was in default under the land contract.

After the restatement of the Trust agreement, a troubling pattern emerged in which plaintiff frequently left decedent alone for days at a time, decedent directed his attorney to file for divorce, and plaintiff then returned and persuaded decedent to sign a document stipulating to dismiss the divorce action. This occurred on a serial basis. There were three consecutive divorce actions filed by decedent, the first two of which decedent ultimately agreed to dismiss, and the third of which remained pending when decedent died.

In December 2018, Van Dan Steene filed in the Macomb Probate Court a petition to be appointed as decedent's guardian. The petition noted that decedent had frequently been left alone for days without contact or assistance from plaintiff. Decedent was a legally blind, insulin-dependent diabetic who needed supervision in his home. On January 11, 2019, Dr. Daniel Blake, Ph.D., provided an independent psychological evaluation report and recommended the appointment of a guardian. On February 25, 2019, the Macomb Probate Court entered an order

granting the petition for appointment of a guardian and appointing Van Dan Steene as decedent's full guardian.

On May 9, 2019, decedent executed an amendment of the Trust agreement as restated on September 24, 2018. The May 2019 amendment removed the bequests to plaintiff and disinherited her. It provided that the beneficiaries of the Trust were the nieces and nephews of decedent's late wife, Susan. The May 2019 amendment further stated: "SETTLOR ACKNOWLEDGES THE EXISTENCE OF HIS SECOND WIFE, CARRIE REYNOLDS[,] FROM WHOM HE HAS FILED A DIVORCE ACTION. FOR REASONS KNOWN TO SETTLOR, SETTLOR INTENTIONALLY MAKES NO PROVISION FOR HER."

Decedent died on June 12, 2019. Following decedent's death, his estate planning attorney, Kathryn Caruso, continued to serve as attorney for the Trust and had a responsibility to assist in wrapping up the estate. Shortly after decedent's death, Caruso served on plaintiff a notice of forfeiture with respect to the land contract on the Dove property. Caruso did this because the land contract was in default and had been in default for some time.

On July 22, 2019, in 42nd District Court Case No. 2019-2137-SP, the Trust initiated land contract forfeiture proceedings against plaintiff and Nathan with respect to the Dove property, seeking either to bring the land contract current or to recover possession of the Dove property. On September 5, 2019, plaintiff moved to file a countercomplaint and to have the case removed to the Macomb Circuit Court because of the amount in controversy. On September 13, 2019, the 42nd District Court entered an order transferring the portion of the case pertaining to plaintiff's countercomplaint to the Macomb Circuit Court. The district court retained jurisdiction over the Trust's forfeiture complaint and stayed proceedings on the Trust's forfeiture complaint pending the resolution of the countercomplaint.[2] The proceedings regarding the countercomplaint were later transferred from the Macomb Circuit Court to the Macomb Probate Court.

In the countercomplaint, plaintiff asserted claims related to the Dove and Redwood properties, including on the basis of decedent's earlier bequests that had been revoked by the May 2019 amendment. After discovery, defendant moved for summary disposition. In response to the summary disposition motion, plaintiff argued for the first time that decedent lacked testamentary capacity when he executed the May 2019 amendment. In granting summary disposition to defendant, the probate court determined that plaintiff had failed to demonstrate a genuine issue of material fact regarding her contention that decedent lacked testamentary capacity. Plaintiff then moved for reconsideration, which the probate court denied. This appeal followed.

On appeal, plaintiff presents arguments contesting the grant of summary disposition to defendant with respect to plaintiff's challenge to decedent's testamentary capacity. Plaintiff's arguments are unconvincing.

---

[2] Although the Trust initiated the district court proceedings, the Trust has been referred to as defendant and Carrie Reynolds Harris has been referred to as plaintiff throughout most of the subsequent litigation, presumably because it is the countercomplaint that is the only relevant pleading for the purpose of the litigation at issue.

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Although defendant cited MCR 2.116(C)(8) and (10) in its motion for summary disposition, the probate court correctly decided the testamentary-capacity issue under MCR 2.116(C)(10) because the issue involved consideration of evidence beyond the pleadings.

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, 504 Mich at 160 (quotation marks and citations omitted).]

MCL 700.7601 provides, "The capacity required to create, amend, revoke, or add property to a revocable trust, or to direct the actions of the trustee of a revocable trust, is the same as that required to make a will." MCL 700.2501 states:

> (1) An individual 18 years of age or older who has sufficient mental capacity may make a will.

> (2) An individual has sufficient mental capacity to make a will if all of the following requirements are met:

> (a) The individual has the ability to understand that he or she is providing for the disposition of his or her property after death.

> (b) The individual has the ability to know the nature and extent of his or her property.

> (c) The individual knows the natural objects of his or her bounty.

> (d) The individual has the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will.

To have testamentary capacity, a person must "be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make." *Persinger v Holst*, 248 Mich App 499, 504; 639 NW2d 594 (2001) (quotation marks and citations omitted). A testator must know what property is owned, to whom he wishes to give the property, and how that is to be accomplished. *Id*. Testamentary capacity is presumed. *In re Powers' Estate*, 375 Mich 150, 158; 134 NW2d 148 (1965). A challenger to the validity of the instrument has the burden of showing lack of testamentary capacity. MCL 700.3407(1)(c); *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW2d 436 (1953). Whether a person has testamentary capacity "is judged as of the time of the execution of the instrument, and not before or after, except as the condition before or after is competently related to the time of execution." *In re Powers' Estate*, 375 Mich at 158.

"Weakness of mind and forgetfulness are insufficient to invalidate a will if it appears that the mind of the testator was capable of attention and exertion when aroused and he was not imposed upon." *In re Paquin's Estate*, 328 Mich 293, 302; 43 NW2d 858 (1950); see also *In re Sprenger's Estate*, 337 Mich at 521 ("Weakness of mind and forgetfulness are . . . insufficient of themselves to invalidate a will."). The appointment of a guardian does not by itself establish lack of testamentary capacity. *In re Sprenger's Estate*, 337 Mich at 521; *In re Paquin's Estate*, 328 Mich at 302. "A testator may be suffering physical ills and some degree of mental disease and still execute a valid will, unless the provisions thereof are affected thereby." *In re Ferguson's Estate*, 239 Mich 616, 627; 215 NW 51 (1927). Additionally, neither a "lack of wisdom in the disposition of the property nor the fairness of the provisions of the will [should] influence the court in a determination of mental competency." *In re Sprenger's Estate*, 337 Mich at 521.

The probate court correctly determined that plaintiff failed to present evidence showing a genuine issue of material fact regarding whether decedent lacked testamentary capacity when he executed the May 2019 amendment revoking his bequests to plaintiff and disinheriting her. Plaintiff relies on documents associated with the appointment of a guardian for decedent. But none of those documents indicate that respondent was unable "to comprehend the nature and extent of his property, to recall the natural objects of his bounty, [or] to determine and understand the disposition of property which he desire[d] to make." *Persinger*, 248 Mich App at 504 (quotation marks and citations omitted).

In December 2018, Van Dan Steene filed a petition to be appointed as decedent's guardian. The petition noted that decedent had frequently been left alone for days without contact or assistance from plaintiff. Decedent was a legally blind, insulin-dependent diabetic who needed supervision in his home. He had often contacted a neighbor, his attorney, or the family of his deceased wife asking for assistance and needing medications and food. The petition recounted the ongoing pattern of decedent filing for divorce and of plaintiff returning and persuading decedent to dismiss the divorce case. Van Dan Steene indicated that he could no longer take instructions from decedent when his physical, emotional, and financial wellbeing were at risk.

Van Dan Steene testified that decedent "was so stressed of on again, off again, and he was not getting the care. [Plaintiff] would disappear for four or five days, and he was out of meds, he was being dehydrated, he was—he was not in a position where he should be left alone for 24 hours." Van Dan Steene testified that the Trust then began paying more than $26,000 a month for "24/7 care" for decedent. From approximately July 2019, to November 2019, the Trust had been paying plaintiff to take care of decedent so that she could make her land contract payments, even though she was married to him. Van Dan Steene testified: "But she would disappear. She wouldn't do it. And he could not be left alone for three, four or five days at a time by himself. And so I took action to become guardian, and get him additional help to see that his needs were met."

In his January 11, 2019, independent psychological evaluation report, Dr. Blake recounted the pattern of the divorce filings as well as efforts by plaintiff to sever decedent's ties to Caruso and Van Dan Steene. Dr. Blake noted serious concerns about decedent's wellbeing when plaintiff left him for days at a time without arranging for his care during her absences. Decedent "openly acknowledges his wife leaves him for days at a time without contacting him, her wishes for him to terminate his ties to his attorney and financial advisor and his requests for his attorney to file

-5-

divorce papers." Dr. Blake discussed disturbing statements by decedent reflecting that he had suicidal thoughts related to his relationship with plaintiff.

Dr. Blake provided the following conclusions, diagnosis, and recommendation:

[Decedent] appears to be a desperate man trying before he dies to find meaning in his life and he has brought agony into his life the way he is attempting to find meaning. [Decedent] said his mind is now weak and he can not resist his wife's demands and can [no] longer make sound decisions.

I am in agreement with [decedent] that his mind is weak which leaves him vulnerable to exploitation and this is what is happening. [Decedent] too believes this is happening yet feels unable to take sensible action. It is unfortunate and sad [decedent] is living his last years in such agony.

I do believe as a function of his advanced age and weakened mind [decedent] now is an incapacitated individual as he is incapable of making informed decisions and taking sensible action.

Diagnosis: Cognitive Impairment

Recommendation: Appoint a guardian[.]

On February 25, 2019, the Macomb Probate Court entered an order granting the petition for appointment of a guardian and appointing Van Dan Steene as decedent's full guardian. The order stated that decedent was totally without the capacity to care for himself. The order further indicated that there was clear and convincing evidence that, by reason of mental deficiency and physical illness or disability, decedent was "impaired to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions and is an incapacitated individual."

When understood in their full context, these documents reflect that a guardianship was deemed appropriate because decedent had a physical illness or disability, including being a legally blind, insulin-dependent diabetic, as well as a weakened mind that left him vulnerable to exploitation by plaintiff. Plaintiff's ongoing pattern of abandoning decedent without arranging for his care, despite his physical ailments, and despite the fact that she was being paid to care for him, was an understandable cause of concern. None of the evidence associated with the guardianship indicates that decedent lacked testamentary capacity when he executed the May 2019 amendment.

In truth, the evidence establishes without contradiction that decedent was mentally competent to execute the May 2019 amendment. Plaintiff herself testified that decedent "always took care of himself," that he "was always healthier than" her, and that he was of sound mind and sound body.[3] Van Dan Steene testified that decedent did not have Alzheimer's disease, and

---

[3] Plaintiff seems to have been describing decedent in a general sense and did not specify a time frame; she was not around decedent at the time of the execution of the May 2019 amendment.

decedent "had all his faculties about him mentally." Caruso testified that she has completed thousands of estate plans. As an estate planning attorney, Caruso has a responsibility to evaluate her client's ability to execute documents. Caruso testified that she could tell from her discussions with decedent that he was of sound mind, including when he executed the May 2019 amendment. Caruso had no question about decedent's desire to amend the Trust agreement to revoke the bequests to plaintiff. Caruso testified that decedent knew the properties he owned, knew the names of Susan's nieces and nephews who had previously been his beneficiaries for years, and "knew that he was incredibly disappointed in [plaintiff], and did no longer want to be married and/or make provisions for her." Decedent told Caruso to remove plaintiff from his estate plan, and Caruso did so by preparing the May 2019 amendment at decedent's request. This testimony indicates that decedent had testamentary capacity.

Plaintiff also relies on hospital records that she first submitted when moving for reconsideration. Those records show that decedent underwent an echocardiogram on May 9, 2019, the date that he executed the May 2019 amendment. He had been admitted to the hospital the previous day for acute congestive heart failure. Plaintiff also provided information she apparently obtained from the internet stating that a patient should not sign legal documents or make important decisions within 24 hours after being under general anesthesia. However, "this Court's review of a trial court's decision on a motion for summary disposition is limited to the evidence that was presented to the trial court at the time the motion was decided." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 15 n 2; 831 NW2d 897 (2012). Therefore, we decline to consider evidence that was not before the probate court when it granted summary disposition to defendant. *Id*.

Accordingly, the probate court correctly determined that plaintiff failed to demonstrate a genuine issue of material fact regarding whether decedent lacked testamentary capacity. The probate court thus did not err in granting summary disposition to defendant.[4] We therefore need not reach the alternative ground for affirmance asserted by defendant.[5]

---

[4] Plaintiff presents no argument on appeal challenging the probate court's determination that she had no claim with respect to the Dove property on the basis of the land contract.

[5] Finally, we note that, in the conclusion section of her brief, plaintiff asserts that the probate court "was prejudiced by the ages, circumstances and genders of [decedent] and [plaintiff]." The introduction section of her brief contains similar accusations. Plaintiff has not presented a legal argument in connection with these assertions. She does not raise a claim of judicial bias in her statement of questions presented. She cites no law on the matter and presents no argument in favor of judicial disqualification. Plaintiff has thus waived any claim of judicial bias by failing to include it in her statement of questions presented. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019). "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Id*. at 519-520 (citation omitted).

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola