*In re* MOXON'S ESTATE.

1. WILLS — MENTAL COMPETENCY — EXPRESSIONS OF OPINION—IN-
   STRUCTIONS—HARMLESS ERROR.
   In proceedings for the allowance of a will, contested on
   the ground of mental incapacity of testatrix, error in ad-
   mitting opinion evidence as to her competency to transact
   business was harmless where the correct test as to her
   competency to execute the will was given in the instruc-
   tions to the jury.[1]

2. SAME—WITNESSES—EVIDENCE—OPINIONS AS TO SANITY.
   In such proceedings, there was no error in permitting
   witnesses to express opinions as to the mental incom-
   petency of testatrix, where they first testified to facts
   inconsistent with sanity upon which their opinions were
   based.[2]

3. SAME—EXECUTION OF WILL.
   A will, to be valid, must be signed by the maker in the
   presence of the subscribing witnesses, who must also sign
   it in the presence of each other and in the presence of
   the maker.[3]

---

[1]Wills, 40 Cyc. p. 1359; [2]Evidence, 22 C. J. § 700; Wills, 40 Cyc. p. 1038; [3]Wills, 40 Cyc. pp. 1120, 1123, 1125.
Necessity that witnesses see testator sign will, or that they know his signature, see note in 38 L. R. A. (N. S.) 161.

4. SAME—EXECUTION OF WILL—HARMLESS ERROR.

Error in instruction on the question of the legal execution of the will was harmless, where the case was not disposed of by the jury on that issue.[4]

5. WITNESSES — DEPOSITIONS — INSTRUCTIONS — RIGHT TO CONTRADICT OWN WITNESS IF MISTAKEN.

An instruction that a party taking the deposition of a witness, while vouching for her and in general terms being bound by her testimony, might introduce other witnesses to contradict her, if she was mistaken in her testimony, but the jury was required to give her testimony the same consideration as that of other witnesses, was correct.[5]

6. WILLS—TRIAL—CRITICISM OF COUNSEL BY TRIAL COURT.

The criticism by the court of proponent's counsel for reference to the drinking propensities of testatrix's husband, who contested the allowance of the will, while unnecessary and too positive in character, *held*, not prejudicial, where it did not appear to have had a controlling influence upon the jury in disallowing the will.[6]

Error to Wayne; Murphy (Alfred J.), J.    Submitted January 19, 1926.    (Docket No. 98.)    Decided March 20, 1926.

Fred J. Renaud presented for probate the last will of Aline Eugenia Moxon, deceased.  The will was disallowed in the probate court, and proponent appealed to the circuit court.    Judgment for contestant.    Proponent brings error.    Affirmed.

*Walter M. Trevor* (*Frank A. Martin* and *George P. Coash*, of counsel), for appellant.

*Monaghan, Crowley, Reilley & Kellogg*, for appellee.

SNOW, J.    Aline Eugenia Moxon died on the 20th day of April, 1924, at her home in the city of Detroit. April 12, 1924 (eight days before her death), she signed what purports to be her last will and testament.

---

[4]Wills, 40 Cyc. p. 1359; [5]Depositions, 18 C. J. § 374; Wills, 40 Cyc. p. 1334; [6]Wills, 40 Cyc. p. 1359.

By its terms Fred J. Renaud, a cousin of the testatrix, who also lived in Detroit, was devised certain valuable real estate, and was also bequeathed personal property. Mr. Renaud offered the will for probate, and objections were made to it by Harvey Moxon, husband of testatrix, on the grounds of mental incompetency and undue influence. It was disallowed by the probate court, an appeal taken to the circuit court, and after a trial by jury again disallowed, the jury finding by its verdict in terms "that the deceased Aline Eugenia Moxon was not competent to make a will at the time the will in question was executed." Such other facts as may be necessary to state in determining the questions raised upon the appeal to this court by proponent will be noted as we proceed. The question of undue influence was withdrawn from the jury by the trial judge, the only thing submitted being as to whether or not the testatrix was of sufficiently sound mind to execute the proffered will.

1. Proponent first complains that the court permitted to be answered questions as to whether or not, in the opinion of the witness, testatrix was competent to transact business on the day of the execution of the will. While this is not the test of one's mental capacity to make a will, there was no harm in giving an opinion as to her competency to transact business, when the correct test was given to the jury in the instructions of the trial judge.

The jury was instructed:

"It is not necessary that a person must have the same perfect and complete understanding as a person in sound and vigorous health of body and mind would have, and thus be required to know the precise legal effect of every provision contained in her will; but it must appear, in order to validate the will, that Mrs. Moxon understood essentially the nature of the act she was doing, that she understood and comprehended the extent of her property, her relations to others who may or naturally would be the object of her bounty,

the scope and the bearing of the provisions of her will; and she must have had sufficient active memory to collect, to assemble in her mind, without prompting, the elements of the business to be transacted, and to hold them in her mind a sufficient length of time to perceive, at least, their obvious relations to each other and be able to form some rational judgment in reference to them."

The jury was further instructed in regard to being mentally competent to transact business as follows:

"You are not to determine whether upon April 12th, last, Mrs. Moxon was mentally competent to engage in any business, or to comprehend the elements of a business transaction, or to understand the meaning of a legal document, except as these facts may have a bearing upon the only question of fact you are to decide, namely, was she, on April 12th, last, of sufficiently sound mind to validate this instrument."

The jury was in no way misled, but, from the plain instruction given by the court, must have fully understood the test to be applied in determining one's mental competency to execute a will.

2. Proponent takes exception to the court permitting lay witnesses to express opinions as to the mental incompetency of the testatrix. We find nowhere in the record that this was done excepting where the witness first testified to facts inconsistent with sanity and based the opinion on those facts. Then, too, this was fully explained to the jury by the charge of the trial judge in his instructions, as follows:

"Now the law does not place any limit upon the kind of witnesses, who may thus be called for your enlightenment; it does not require that medical witnesses, or expert witnesses may not necessarily be called; it does not require that only expert witnesses or medical witnesses may be called; no; but in its wisdom, the law provides that any witness, lay or expert, medical or nonmedical, who has any knowledge which might throw enlightenment upon the present issue here, namely, upon the 12th of last April, did

Mrs. Moxon have the necessary soundness of mind to make this instrument—any witness who can throw light upon that question may be received and heard; that is to say, persons who had the opportunity to observe and to talk to her may announce for your benefit the results and the impressions formed, they may testify to occurrences had with her; persons designated in the law as nonexpert witnesses can and have here testified to the observations, to conversations with her, and basing their conclusions upon such observations and on such conversations, they have been permitted to give you their opinion, whether or not she possessed at the time in issue, the necessary testamentary ability to execute Exhibit 2."

This instruction is also complained of, but we find nothing erroneous therein.

3. The next assignment of error of proponent relates to the instructions of the court as to the law governing the execution of a will. There was a dispute in the testimony as to whether or not both witnesses signed in the presence of the testatrix, and in the presence of each other, the contestant claiming one of the witnesses failed to do this. That portion of the charge complained of is as follows:

"So, if one desires to make a will, he must sign the instrument himself, he must do it in the presence of two witnesses who are to act as subscribing witnesses, and then the testator, having signed the will, these two attesting witnesses must likewise sign it in the presence of each other, and also in the presence of the testator."

The question of fact in dispute was not whether the testatrix signed in the presence of the subscribing witnesses, but whether they signed in her presence, and in the presence of each other. On this question the court properly instructed the jury as follows:

"It is the claim of contestants that at least one of these subscribing witnesses did not conform to these statutory requirements, and the claim is made that at

least one of these subscribers—as witnesses—did not sign either in the presence of the testatrix, or did not sign in the presence of the other subscribing witness.

"Now, as to this phase of the case, members of the jury, those who offer the will, namely, the proponents, must establish to your satisfaction by a fair preponderance of the evidence, that Exhibit 2 was executed in the exact manner required by the statute, namely, that Mrs. Moxon signed the instrument herself, that thereafter it was signed by the subscribing witnesses, Mrs. Fraleigh and Mr. Flowerday, and that these two subscribing witnesses attached their names in the presence of each other and in the presence of Mrs. Moxon. If the proponents have satisfied you of those facts, by a fair preponderance of the evidence, then Exhibit 2 was validly executed. If they have failed in this respect so as to satisfy you, then the will was not validly executed and is invalid and should be disallowed. So that logically, then, your first inquiry should be devoted to ascertaining, under the rules I have just stated, whether or not the requirements of the law were observed in the execution of the instrument itself. If they were not then that would end the controversy and you should find against the allowance of the will. If it was validly executed, then there remains the next phase of this case for your consideration and decision."

See *Cook* v. *Winchester*, 81 Mich. 581 (8 L. R. A. 822), and *In re Dougherty's Estate*, 168 Mich. 281 (38 L. R. A. [N. S.] 161, Ann. Cas. 1913B, 1300).

The deputy clerk, receiving the verdict of the jury, testified upon the hearing of the motion for a new trial that the verdict was as follows:

"That the jury, after careful deliberation find that the deceased, Aline Eugenia Moxon, was not competent to make a will at the time the will in question was executed."

Whether this technically may or may not be considered as a special verdict, it shows that the case was not disposed of by the jury on the question of the legal execution of the will.

4. Proponent assigns error upon the instructions of the court in calling special attention to the deposition of one of the witnesses, Mrs. Ella Zimmerman. That portion of the charge complained of is as follows:

"Now the proponents took the deposition of Mrs. Ella Zimmerman, one of the rules of law applicable to the calling of witnesses in every case is this: As laymen you are probably not familiar with because it is not called to the attention of laymen. The party in a litigation who calls a witness thereby vouches for the witnesses, that is to say, I am suing one of you, and I call a witness to the witness box, and I thereby vouch for the credibility of that witness; I offer him for consideration, at the hands of a jury, and thereby impliedly say, this is my witness, he is worthy of your credence.

"That rule applies to the witnesses that each of the parties in this case have called for his own purposes, and therefore applies to Mrs. Zimmerman. However, it does not necessarily follow that the party calling the witness is thereby bound by all the witness may say; because a witness may be mistaken, a witness may forget; and consequently, while generally speaking the proponents in this case, in taking the deposition of Mrs. Zimmerman, thereby vouch for her and in general terms are bound by her testimony, if they found in any respect that she was mistaken in what she said, they had the privilege of introducing other witnesses to contradict her. What she said should receive your careful consideration, to the same extent, the same measure, that you would give to all these other witnesses in the case, keeping in mind of course that Mrs. Zimmerman was the proponent's witness, and though what she said was, generally speaking, binding upon the proponent, nevertheless it was permissible and proper for them to introduce other testimony tending to contradict her, if in any respect the proponent thought she was mistaken in what she said."

We find no error in this instruction. It is a correct statement of the law.

5. The appellant contends that the verdict was against the great weight of the evidence. Many witnesses testified on each side of the case. The testimony received was competent, and a fair issue was made as to the mental capacity of the testatrix at the time the will was signed. This issue was fully and fairly, and in a most able and understandable manner, submitted to the jury by the trial judge, and there is no basis for holding as a matter of law that the verdict is against the weight of the evidence. With this view of the case, after a careful reading of the entire record, it would be of no profit to any one to recite the evidence which leads us to this conclusion.

6. In the argument of counsel for proponent, Frank T. Lodge, to the jury, he made reference to the question of the drinking of Mr. Harvey Moxon, husband of the testatrix. Upon objection by opposing counsel the court in the absence of the stenographer and according to the recollection of those present said:

"Yes, that is right. That remark was highly improper. There is no testimony whatever in the case to warrant it and you will entirely disregard it, and you will entirely disregard that remark."

The language of Mr. Lodge which is claimed to have been objectionable was, according to his affidavit upon the motion for a new trial, "Then comes the drinking part, which I will not read." The statement of the court is somewhat justified by the fact that very little, if any, testimony was given upon the trial relative to the drinking of Mr. Moxon. The court's criticism of Mr. Lodge, however, for his reference to this subject, was unnecessary and too positive in character, but we cannot say that it had any controlling influence upon the jury.

We have examined and discussed all the assignments of error. The verdict of the jury, rendered after

234—Mich.—12.

very able and complete instructions as to the law governing the case, ought not to be disturbed.

Judgment affirmed, with costs to the appellee.

BIRD, C. J., and SHARPE, STEERE, and FELLOWS, JJ., concurred. WIEST, CLARK, and MCDONALD, JJ., concurred in the result.