*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* JLD LIVING TRUST.

---

JLD, Trustee of the JLD LIVING TRUST, and
DAVID SALIM, Conservator,

      Appellees,

v

TINA NOWAK,

      Appellant.

UNPUBLISHED
August 24, 2023

No. 361850
Shiawassee Probate Court
LC No. 22-039912-TV

---

*In re* CONSERVATORSHIP OF JLD.

---

DAVID SALIM, Conservator of JLD, a Protected
Person,

      Appellee,

v

TINA NOWAK, MARK DOEPKER, CRAIG
DOEPKER, and SCOTT DOEPKER,

      Appellants.

No. 361854
Shiawassee Probate Court
LC No. 20-039104-CA

---

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

In Docket No. 361850, appellant Tina Nowak appeals as of right the portion of the trial court order denying her petition to "cause registration of trust, confirmation of incapacity, and further funding" with respect to the JLD Living Trust (Nowak's petition). In Docket No. 361854, appellants,[1] Nowak, Mark Doepker, Craig Doepker, and Scott Doepker, appeal as of right the portion of the same order granting the petition of JLD, Trustee of the JLD Living Trust, for court approval to revise his estate plan (JLD's petition), the effect of which was to disinherit appellants, his niece and nephews. This Court consolidated the appeals.[2] Because there are no errors, we affirm.

## I. BASIC FACTS

JLD was born in 1940 and never married or had children. His sole living heir is his brother, Robert, who is not involved in these cases. Appellants are Robert's children. In November 2016, JLD executed both a will and the JLD Living Trust (the trust). The trust generally provided that $1,000 of the assets would be distributed to St. Paul Catholic School in Owosso, Michigan, with the rest to be equally distributed to appellants.

JLD appointed himself as trustee and reserved in himself a number of rights and powers, including the right to alter, amend, modify, or revoke the trust in whole or in part, "at any time or times, by an instrument in writing, which has been dated, signed by me." The trust provided that any such alteration, amendment, modification, or revocation "shall be effective immediately upon delivery to the then acting Trustees." It also provided that the trust "shall be irrevocable upon my death or incapacity." The trust listed Craig Doepker as JLD's successor trustee should JLD die, become incapacitated, become unable to act as trustee for whatever reason, or resign as trustee, and provided that if Craig was unable or declined to act as successor trustee, or if he resigned or died while acting as successor trustee, Nowak would become successor trustee without court order. The trust also provided that in determining whether JLD was unable to act as trustee, the next nominated successor could conclusively rely on written medical opinions by two independent licensed physicians, with one being written by JLD's personal physician, if possible.

In July 2020, Nowak petitioned for appointment of a conservator and guardian on behalf of JLD and sought to be appointed to serve in those capacities. In support of her petition, she attached a 2019 neurological evaluation by Edward C. Cook, Ph.D. Dr. Cook diagnosed JLD with mild cognitive disorder. Dr. Cook's evaluation noted that JLD had slowed information processing and that his scores indicated that he could be taken advantage of. Dr. Cook recommended that "at least for the present time," a guardianship be secured to ensure that "suggested treatments and their consequent gains can be appropriately pursued."

A guardian ad litem (GAL) appointed for JLD reported that JLD suffered from dementia, confusion, and a decline in health and mobility. The GAL noted that JLD was able to live independently but that he lacked sufficient understanding and the capacity to make medical and

---

[1] Use of the term "appellants" will refer to appellants collectively.

[2] *In re JLD Living Trust*; *In Re Conservatorship of JLD*, unpublished order of the Court of Appeals, entered July 2, 2022 (Docket Nos. 361850 and 361854).

financial decisions for himself.  The GAL opined that JLD would benefit from a guardian that could supervise his medications.  The GAL also opined that JLD needed a conservator to take control of his assets, property, and financial matters because he "has started to give away funds to random unexpected visitors that have come by his farm."  The court entered a temporary order appointing Nowak as a limited conservator to "sequester and secure all assets and pay only necessary bills" until October 7, 2020, or until a full hearing could be held.  The court appointed Nowak as JLD's temporary guardian regarding only JLD's "emergency medical needs and responsibilities" until January 7, 2021, or until a full hearing could be held.

In October 2020, JLD objected to appointment of a guardian and conservator.  He had undergone an eight-hour comprehensive mental examination by Dr. Gerald R. Williams on September 30, 2020, and was awaiting the results of the examination.  JLD asserted that he lived on his own, that he had a valid driver's license, and that he confidently drove a vehicle.  According to JLD, he initially did not object to someone helping him with his finances because he was "getting older and has some physical problems" and he believed that Nowak was "just going to help him out."  JLD contended that Nowak had sequestered his assets and deprived him of use of his two farms and investment accounts, that she transferred $42,000 from his bank account to a sequestered account and left him with only $800, and that she sold 17 of his cattle without his permission.  JLD stated that Nowak lived in Detroit and had little to no contact with him.  He requested that the court appoint an independent party if it determined that he needed a guardian or a conservator.

A hearing was held on the petitions on January 11, 2021.  The court found that JLD needed a conservator because he was unable to manage his property and business affairs effectively because of mental illness, mental deficiency, physical illness or disability, and declining health.  The court appointed appellee David Salim as conservator.  The court also found that JLD was "impaired to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions and is an incapacitated individual."  Additionally, the court found that JLD was "partially without the capacity to care for himself" because of mental illness, mental deficiency, physical illness or disability, and declining health.  As a result, the court appointed "Guardian Angels Services c/o Patricia Bush" to serve as JLD's guardian.

In June 2021, JLD petitioned to terminate the guardianship and the conservatorship on the ground that he was fully competent and able to care for his financial needs without a conservator's assistance and was able to care for his own needs without a guardian's assistance.  JLD attached to the petitions a May 5, 2021 letter from Dr. Jeanie Cote, M.D., a neurologist who performed an evaluation of JLD to assess his testamentary capacity.  The court appointed a lawyer-GAL to meet with JLD and provide a written report with recommendations before the hearing on the petitions.

In the meantime, Bush petitioned to modify the guardianship on the ground that she was not able to carry out her duties as guardian because of interference by Sadie Leonard.[3]  In response to the petition, Salim agreed that Sadie's actions were frustrating to Bush, but he believed that those actions were clearly beneficial for JLD, who was thriving and happier than he had been in

---

[3] Sadie was the wife of JLD's former coworker and friend.

years due primarily, if not entirely, to Sadie's intervention at a time when JLD "appeared to be sliding toward convalescence." Salim noted that appellants had little to no involvement in JLD's life. Salim stated that JLD had "substantial mental capability" that was "only incidentally affected and normally is associated with fatigue or dietary shortcomings." Salim said that if the court determined that JLD had a continued need for a guardian and conservator, he believed that it would be beneficial for JLD to have Sadie serve in those capacities. Nowak and appellant Mark Doepker requested that the court appoint a third-party guardian and conservator. They contended that Sadie had a history of exerting undue influence over JLD and that court intervention was necessary to protect JLD from her.

On August 23, 2021, the lawyer-GAL filed a report. The lawyer-GAL had met with JLD and Bush and had reviewed (1) the May 2021 letter from Dr. Cote indicating that JLD had testamentary capacity, (2) Dr. Cook's April 2019 intake report indicating the need for additional testing regarding the possibility of dementia, and (3) Dr. Williams' October 2020 report indicating that JLD did not lack the capacity to make decisions for himself. The lawyer-GAL reported that JLD told him that he had been taken advantage of financially in the past and that he was not going to let that happen again. He also reported that Nowak, Craig, and Mark, as well as some of JLD's neighbors, believed that Sadie was trying to isolate JLD from his family and friends. Nowak, Craig, and Mark were concerned that Sadie intended to change JLD's estate plan for her own benefit. The lawyer-GAL reported that no one was willing to take on the responsibility of being JLD's guardian. The lawyer-GAL opined that it was in JLD's best interests that Sadie be appointed guardian and conservator. He noted that JLD was not completely reliant on others for his care, but that he needed someone to provide him with assistance. He recommended that the court retain jurisdiction requiring approval of any changes to JLD's estate plan prior to the changes being effective.

Appellants asked the court to deny JLD's motions to terminate the guardianship and conservatorship. They opposed the appointment of Sadie as conservator or guardian, and asked the court to appoint a disinterested successor guardian and conservator. In a countermotion, they also asked the court to issue an order preventing the Leonards from changing JLD's estate plans.

Following a hearing on the various petitions, the court entered an order on November 16, 2021. In relevant part, the order stated that the petitions filed on behalf of JLD "are withdrawn and dismissed," that the guardian's and the conservator's petitions were adjourned, and that "no changes in the estate planning or non-day-to-day administration of the Protected Person's estate shall occur unless by further order of this Court."

On January 24, 2022, Craig signed a resignation as successor trustee. On the same day, Nowak signed an acceptance as successor trustee. On February 8, 2022, Nowak filed a petition to confirm herself as successor trustee of the trust, to confirm JLD's incapacity, to register the trust, and to fund the trust. According to Nowak, she was aware that JLD's guardian or conservator had taken steps toward amending the trust. Relying on Dr. Cook's 2019 finding that JLD had "impaired decision-making and problem solving ability," and on the July 2020 opinion of JLD's personal physician, Jonathan King, M.D., that JLD needed a guardian and conservator, Nowak stated that she determined that JLD was unable to act as trustee. Nowak also contended that because the court had previously found that JLD was incapacitated and that appointment of a guardian was necessary, the trust was irrevocable because of JLD's incapacity.

-4-

Bush answered the petition on February 23, 2022, and noted that JLD had undergone an extensive evaluation by Dr. Williams and was found to be competent. She also noted that JLD had two additional evaluations by Dr. Cote in May 2021 and December 2021 and was determined to have testamentary capacity to change his estate plan. Bush noted that Dr. King opined in July 2020 that JLD needed a guardian and conservator, but she added that the need for a guardian was not because of mental incapacity but because of his physical limitations.

JLD asked the court to deny Nowak's petition. He stated that on February 25, 2022, he executed a revocation of will, codicils, and testamentary dispositions, as well as a revocation of trust. He indicated that he would be filing with the court a petition to approve his estate plan as required by the court's prior order, and that his revised estate plan "will most certainly exclude" appellants as beneficiaries of the trust. Thereafter, JLD petitioned the court to approve his revised estate plan. He noted that Dr. Cote had twice determined that he possessed the requisite testamentary capacity to execute estate-planning documents. JLD stated in his petition that his relationship with appellants had declined since he executed his original estate plan and that he had made it clear to his guardian and conservator that he intended to revise his estate plan to exclude appellants as beneficiaries of his estate.

Appellants asked the court to deny JLD's petition. They maintained that any change in their relationship with JLD was the result of the Leonards' influence. They acknowledged that Dr. Cote determined that JLD had testamentary capacity, but they claimed that Dr. Cote's evaluations were "fatally defective." They maintained that JLD could not execute the documents to revise his estate plan because the court found during the guardianship proceeding that JLD was legally incapacitated. In a supplemental brief, they again argued that the court could not approve the revised estate plan because JLD was legally incompetent to contract when he signed the revised documents and the petition.

A hearing was held on JLD's petition on May 9, 2022. JLD's lawyer stated that JLD had expressed to him his intent to revise his estate plan. He argued that it was not JLD's burden to prove testamentary capacity. Nevertheless, in May 2021, and again in December 2021, Dr. Cote determined that JLD possessed the requisite testamentary capacity to make and execute estate-planning documents. The court admitted Dr. Cote's evaluations without objection. Next, JLD's lawyer explained that on February 25, 2022, JLD executed a revocation of will, codicils, and testamentary dispositions and a revocation of trust. He also executed a last will revoking prior wills and leaving his entire estate to charity. JLD's lawyer asked the court to approve the revised estate plan documents. In response, appellants' lawyer argued that JLD had been adjudged incompetent in the guardianship proceeding and that the court had to determine whether JLD was competent when he signed the revised estate-planning documents on February 25, 2022. He also argued that even if JLD had testamentary capacity, he was not competent to sign the documents and the petition. He maintained that appellants had been denied discovery and an evidentiary hearing on JLD's testamentary capacity and competence.

The probate court found that JLD had testamentary capacity to change his estate plan and entered an order granting JLD's petition and approving the changes to his estate plan. Subsequently, JLD asserted that Nowak's petition was moot because the court approved JLD to revoke the trust on May 9, 2022. The court asked Nowak's lawyer what remained to address in light of the court's May 9 ruling. Nowak's lawyer responded that on May 9 the court addressed

only JLD's testamentary capacity, whereas Nowak's petition raised the question of whether the term "incapacity" in the trust meant legal capacity or testamentary capacity. He argued that if the term meant "legal capacity," the trust was irrevocable because the probate court determined that JLD was legally incapacitated when it appointed a guardian for JLD. He also asserted that JLD could not sign an affidavit attesting to his intent because the court had determined that he was legally incompetent. The court denied Nowak's petition, holding that "we've litigated and discussed, and ruled on these issues back on [May 9] and those orders will stand." Thereafter, the court entered an order on approving JLD's petition and denying Nowak's petition. These consolidated appeals follow.

## II. SUBJECT-MATTER JURISDICTION

### A. STANDARD OF REVIEW

Appellants argue that the probate court did not have subject-matter jurisdiction to consider JLD's petition for court approval to change his estate plan because the probate court did not have subject-matter jurisdiction "to adjudicate the validity of the ward's 2022 will and will revocation before the ward's death." No steps need to be taken to preserve a challenge to subject-matter jurisdiction, *Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572, 615; 854 NW2d 172 (2014), and "a challenge to subject-matter jurisdiction may be raised at any time, even if raised for the first time on appeal," *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996). We review de novo a challenge to subject-matter jurisdiction. *Schaaf v Forbes (On Remand)*, 338 Mich App 1, 11; 979 NW2d 358 (2021).

### B. ANALYSIS

Subject-matter jurisdiction is a court's authority to exercise judicial power in a given class of cases. *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). In other words, whether subject-matter jurisdiction exists does not depend on the facts of the case or the evidence adduced at trial. *Id*. Rather, whether a court has subject-matter jurisdiction over a given action is determined by reference to the allegations in the pleadings. *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 561; 840 NW2d 375 (2013). "[W]here it is apparent from the allegations of a complaint that the matter alleged is within the class of cases in which a particular court has been empowered to act, subject-matter jurisdiction is present." *Luscombe v Shedd's Food Prod Corp*, 212 Mich App 537, 541-542; 539 NW2d 210 (1995).

The probate court is a court of limited jurisdiction and derives its power from statutes. *Manning v Amerman*, 229 Mich App 608, 611; 582 NW2d 539 (1998). As relevant here, MCL 600.841(1)(a) provides that "[t]he probate court has jurisdiction and power . . . [a]s conferred upon it under the estates and protected individuals code [EPIC], . . . MCL 700.1101 to 700.8206." In turn, MCL 700.1302, provides in relevant part:

The court has exclusive legal and equitable jurisdiction of all of the following:

* * *

(c) Except as otherwise provided in section 1021 of the revised judicature act of 1961, 1961 PA 236, MCL 600.1021,[4] a proceeding that concerns a guardianship, conservatorship, or protective proceeding.

JLD was a legally protected person under a guardianship and conservatorship. The probate court, in response to appellants' countermotion, issued an order requiring permission from the court to change JLD's estate plan. Appellants concede that the court had authority to enter this order under its broad powers set forth in EPIC. See generally MCL 700.5401–700.5433. They concede that they "always agreed with the order because the order only required [JLD] to seek permission to amend his estate plan." In compliance with this order, JLD petitioned for court approval to change his estate plan. JLD did not ask the court to adjudicate the validity of the will or the will revocation; nor did the court adjudicate the validity of the documents. Rather, the court found that JLD had testamentary capacity and allowed him to change his estate plan. Because JLD's petition was brought in the guardianship and conservatorship proceedings, the probate court had subject-matter jurisdiction under MCL 700.1302(c) over JLD's petition for court approval to change his estate plan.[5]

## III. DISCOVERY AND AN EVIDENTIARY HEARING

### A. STANDARD OF REVIEW

Appellants argue that the probate court erred by not permitting discovery and by failing to hold an evidentiary hearing because a disputed question of fact existed with respect to whether JLD had sufficient capacity under MCL 700.2501 to revoke his will and under MCL 700.2601 to revoke his trust. They also argue that a question of fact existed regarding undue influence. A trial court's decision to grant or deny discovery is reviewed for an abuse of discretion. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

### B. ANALYSIS

MCL 700.7601 provides that "[t]he capacity required to create, amend, revoke, or add property to a revocable trust, or to direct the actions of the trustee of a revocable trust, is the same as that required to make a will." MCL 700.2501 states:

---

[4] Under MCL 600.1021(2)(a), the family division of circuit court has ancillary jurisdiction over "[c]ases involving guardians and conservators as provided in article 5 of the estates and protected individuals code, 1998 PA 386, MCL 700.5101 to 700.5520," that commenced on or after January 1, 1998.

[5] Salim authorized JLD and his lawyer to petition for court approval to change JLD's estate plan.

(1) An individual 18 years of age or older who has sufficient mental capacity may make a will.

(2) An individual has sufficient mental capacity to make a will if all of the following requirements are met:

(a) The individual has the ability to understand that he or she is providing for the disposition of his or her property after death.

(b) The individual has the ability to know the nature and extent of his or her property.

(c) The individual knows the natural objects of his or her bounty.

(d) The individual has the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will.

Thus, to have testamentary capacity, a person must "be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make." *Persinger v Holst*, 248 Mich App 499, 504; 639 NW2d 594 (2001) (quotation marks and citations omitted). Testamentary capacity is presumed. *In re Powers Estate*, 375 Mich 150, 158; 134 NW2d 148 (1965). Whether a person has testamentary capacity "is judged as of the time of the execution of the instrument." *Id*. at 158.

In support of his petition, JLD provided Dr. Cote's May 2021 and December 2021 letters opining that JLD had the requisite testamentary capacity to execute estate-planning documents. Appellants did not present evidence at the May 9 hearing to overcome the presumption of capacity.[6] They asserted that Dr. Cote's evaluations were "fatally defective," but they offered no explanation for the assertion. They relied on the fact that the probate court appointed a guardian for JLD. However, the appointment of a guardian does not by itself establish lack of testamentary capacity. *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW2d 436 (1953). None of the documents associated with the appointment of a guardian indicated that JLD was unable to comprehend the nature and extent of his property, to recall the natural objects of his bounty, or to determine and understand the disposition of property which he desired to make. *Persinger*, 248 Mich App at 504.

Appellants argue that they did not present evidence regarding JLD's testamentary capacity because the probate court failed to allow them to participate in discovery. Although the court denied appellants' motions for an independent medical examination of JLD and to depose Dr.

---

[6] The probate court reviewed Dr. Cote's evaluations of JLD. Dr. Cote's conclusion that in December 2021 JLD had the requisite testamentary capacity to change his estate plan was nearly contemporaneous with JLD's estate plan amendment. And, although the court did not rely on additional testimony provided, the court also received testimony from JLD's conservator and his legal-GAL establishing the facts on which they relied in reaching their opinions that JLD had testamentary capacity.

Cote, appellants do not challenge or even discuss the court's reasoning for the denials. Moreover, appellants were aware by at least February 2021, when Nowak filed her petition, that JLD intended to revise his estate plan. Nothing prevented them from obtaining lay witness opinions regarding JLD's testamentary capacity. See *In re Moxon's Estate*, 234 Mich 170, 173; 207 NW 924 (1926) (holding that a lay witness "who [has] had the opportunity to observe and talk to [the decedent]" may form "impressions" of the decedent's testamentary capacity and may cite examples for the fact-finder's consideration).

Appellants did not demonstrate that there were disputed questions of fact regarding JLD's testamentary capacity for which discovery or an evidentiary hearing was necessary. An evidentiary hearing is not necessary when there is no dispute of fact but only legal questions at issue before the trial court. See *People v McMillan*, 213 Mich App 134, 142; 539 NW2d 553 (1995). Accordingly, the record does not support that the court improperly denied them from conducting discovery and presenting evidence.

Finally, although they also argue that a question of fact existed regarding undue influence, they did not specifically assert that Sadie unduly influenced JLD to execute his revised estate plan. As a result of their failure to raise this issue in the trial court, we conclude that this issue is waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (stating that the failure to timely raise an issue in the trial court waives review of it on appeal).

## IV. REVOCABILITY OF THE TRUST

Appellants next challenge the probate court order as it relates to the revocability of JLD's trust. In the probate court, they argued that a question of construction existed regarding whether the term "incapacity" in Article Two, Section A, of the trust meant legal capacity or testamentary capacity. They argued that the term meant "legal incapacity." They contended that JLD was legally incapacitated because the probate court appointed a guardian and, therefore, the trust was irrevocable. Appellants do not advance this interpretation on appeal. Instead, they raise an entirely new interpretation that was not raised in the probate court. Specifically, they argue that the trust defined the term "incapacity" to mean "unable to act as trustee." They contend that the trust was irrevocable at the time JLD executed the revised estate plan documents and petitioned for approval of the revised estate plan because Nowak determined that JLD was unable to act as trustee. This argument is waived because appellants did not make this argument in the probate court. See *City of Westland v Okopski*, 208 Mich App 66, 72; 527 NW2d 780 (1994) ("An appeal based on one ground is not preserved where the objection at trial was on a different ground."); see also *Walters*, 481 Mich at 387. Because appellants did not timely raise this argument in the probate court, they have waived review of it.

## V. DUE PROCESS

Appellants raise a due-process issue in their statement of questions presented but they do not present argument on the issue. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, we decline to review this abandoned argument.

Affirmed.  Appellees, as the prevailing parties, may tax costs.  MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle